IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 1, 2023

IN RE KATELYN R. ET AL.

**Appeal from the Juvenile Court for Overton County**
**No. 21-JV-74      Daryl A. Colson, Judge**

———————————————

**No. M2023-00354-COA-R3-PT**

———————————————

The Department of Children's Services ("DCS") removed two children from their parents' custody in May of 2020. After a long period in which DCS did not hear from the children's father, and the father made no progress on his permanency plan, DCS filed a petition to terminate the father's parental rights. Following a bench trial, the Juvenile Court for Overton County (the "juvenile court") found that DCS proved five statutory grounds for termination of the father's parental rights by clear and convincing evidence. The juvenile court also found, by clear and convincing evidence, that termination of the father's parental rights was in the children's best interests. The father appeals and, discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J, W.S., joined.

Kelly R. Williams, Livingston, Tennessee, for the appellant, Nathaniel R.[1]

Jonathan Skrmetti, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Amber L. Barker, Senior Assistant Attorney General; and Jessica Krebs, Assistant General Counsel, for the appellee, Tennessee Department of Children's Services.

---

[1] This Court has a policy of abbreviating the last names of children and other parties in cases involving termination of parental rights in order to protect their privacy and identities.

# OPINION

## BACKGROUND

This is a termination of parental rights case. Nathaniel R. ("Father") is the father of Hailey R. and Katelyn R. (the "Children"), both of whom were removed from their parents'[2] custody by DCS in May of 2020. DCS received a referral about the Children on May 6, 2020, alleging lack of supervision, physical abuse, and psychological harm. A DCS case worker visited Father's home the same day and spoke privately with Hailey R. Hailey R. told the case worker, *inter alia*, that

> [Father] hit [Mother] in the face and the arm with his fist. [Mother] ran outside to get away from [Father]. Hailey tried to run after [Mother] and Katelyn grabbed Hailey for [Father], and then [Father] put Hailey in a head lock. [Father] pulled Hailey's arms backwards and Hailey could hardly talk. [Father] told Hailey that he was going to stab her. Hailey said that [Father] had a knife on his side, but he did not pull it out. Hailey broke loose and ran[] to [Mother].

Hailey R. also reported to the case worker that both parents were using drugs. The case worker observed that the family's trailer was "in shambles[,]" smelled of cigarettes, and had no running water. The property manager also spoke with the case worker on May 6, 2020, claiming that men would come and go from the trailer in the middle of the night. He also confirmed seeing Father put Hailey R. in a headlock while holding one arm behind her back. The property manager explained that he served Father with an eviction notice, but the eviction proceeding was on hold due to the COVID-19 pandemic. Father was charged with child abuse in the Overton County General Sessions Court on May 6, 2020.

Based on the foregoing, DCS alleged that the Children were dependent and neglected in Father's care. The juvenile court entered a protective custody order bringing the Children into DCS custody on May 7, 2020. The juvenile court appointed a guardian ad litem for the Children and ordered that any visitation with the parents be supervised. A preliminary hearing was held on June 3, 2020, after which the juvenile court entered an order finding probable cause that the Children's removal was necessary, that there was no less drastic alternative to removing the Children from the parents' custody, and that the Children would remain in DCS custody. The June 3, 2020 order also required both parents to pass two unannounced drug screens prior to any visitation being set. The juvenile court then held an adjudicatory hearing on August 5, 2020, for which Father failed to appear. In an order entered August 5, 2020, the juvenile court determined, by clear and convincing evidence, that the Children were dependent and neglected in Father's care. On the same

---

[2] The Children's mother surrendered her parental rights in the juvenile court and is not participating in this appeal. The mother is mentioned in this opinion only for context.

day, the juvenile court ratified the first Family Permanency Plan. The plan required Father to pass any drug screens given by DCS; attend an alcohol and drug assessment; undergo a mental health assessment; secure a safe means of transportation and home; attend four hours per month of supervised visitation; secure a legal means of income; and attend parenting classes.[3]

Father failed the drug screens administered by DCS in 2020. According to testimony from trial, Father failed a drug screen on June 1, 2020, testing positive for methamphetamine, THC, and Suboxone. Father failed another drug screen on July 1, 2020, again testing positive for methamphetamine and THC. He also incurred new criminal charges. Father was cited for possessing Subutex[4] on August 29, 2020, and was charged with driving under the influence on November 30, 2020. The arresting officer on the DUI found Father parked in the middle of the road, and, according to the warrant, Father was in possession of a "meth pipe" and "snort straw" containing white powder residue. On December 22, 2020, the Children's case worker, Ms. Vaughn, contacted Father while he was incarcerated in Overton County and gave him a case update. The case worker testified at trial that she gave Father her contact information and instructed him to contact her upon his release.

In January of 2021, Ms. Vaughn again contacted the jail in which Father had been held. However, Father had been released. Ms. Vaughn was unable to locate Father after that point, and there is little to no information in the record about Father's whereabouts or activities after December of 2020. The Children remained in foster care, and, on July 26, 2021, DCS filed its petition to terminate Father's parental rights. As grounds for termination, DCS alleged 1) abandonment by failure to support; 2) abandonment by failure to visit; 3) abandonment by failure to establish a suitable home; 4) substantial noncompliance with permanency plan; 5) persistence of conditions; 6) failure to establish parentage as to Hailey R.; and 7) failure to manifest an ability and willingness to assume custody. DCS also alleged that termination of Father's parental rights was in both Children's best interests. Father did not answer the petition.

Trial was held on October 19, 2022; November 9, 2022; and January 18, 2023. The transcript from October 19, 2022 reflects that Father failed to appear at trial but that his counsel was there. Father called the morning of trial and asked that the matter be continued. The juvenile court denied this request and proceeded with the hearing. The proof presented at trial largely centered around the Children's mother, who had not yet surrendered her

---

[3] The juvenile court ratified several permanency plans regarding Father throughout this case; however, as Father never completed the action steps, the requirements of the various plans remained largely unchanged.

[4] It is unclear from the record whether Father had a prescription for the Subutex. *See* Tenn. Code Ann. §§ 53-11-311(c); 39-17-410 (categorizing Buprenorphine as a Schedule III controlled substance).

rights and was more involved in the case than Father. She ultimately surrendered her rights on the last day of trial. Ms. Vaughn testified that she had not seen or spoken to Father since December of 2020 and that she would not recognize Father if she saw him in person. She testified that while Father began an intensive outpatient program in July of 2020, he was quickly discharged for failure to comply. Other than the failed attempt at the IOP, Father had not completed any action steps in the permanency plan by the time of trial.

The juvenile court entered a final order terminating Father's parental rights on February 15, 2023, finding that DCS proved five statutory grounds by clear and convincing evidence: 1) abandonment by failure to establish a suitable home; 2) persistence of conditions; 3) failure to establish parentage as to Hailey R. only; 4) substantial noncompliance with the permanency plan; and 5) failure to manifest an ability and willingness to assume custody. The juvenile court also found that it was in both Children's best interests to terminate Father's parental rights. Father appealed to this Court.

## ISSUES

Father raises two issues on appeal, which we reorder and slightly restate:

I. Whether the juvenile court's final order contains sufficient findings of fact regarding the statutory grounds for termination.

II. Whether the juvenile court erred in concluding that terminating Father's parental rights is in the children's best interests.

While not raised as an issue by Father, we must also review whether the juvenile court correctly determined that DCS proved the alleged statutory grounds for termination by clear and convincing evidence. *See In re Carrington H.*, 483 S.W.3d 507 (Tenn. 2016).

## STANDARD OF REVIEW

A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L.Ed.2d 49 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547–48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578–79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as *parens patriae* has a special duty to protect minors....' Tennessee law, thus, upholds the [S]tate's authority as *parens patriae* when interference with parenting is necessary to prevent serious harm to a child."

- 4 -

*Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747, 102 S. Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Angela E.*, 303 S.W.3d at 250.

*In re Carrington H.*, 483 S.W.3d at 521–22. Tennessee Code Annotated section 36-1-113(g) provides the various statutory grounds for terminating parental rights. "A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest." *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (citing Tenn. Code Ann. § 36-1-113(c)).

Considering the substantial interests at stake in termination proceedings, the heightened standard of clear and convincing evidence applies. *In re Carrington H.*, 483 S.W.3d at 522 (citing *Santosky*, 455 U.S. at 769). This heightened burden "minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights" and "enables the fact-finder to form a firm belief or conviction regarding the truth of the facts[.]" *Id.* (citing *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010)). "The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not." *Id.* (citing *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005)). Accordingly, the standard of review in termination of parental rights cases is as follows:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). *In re Bernard T.*, 319 S.W.3d at 596; *In re Angela E.*, 303 S.W.3d at 246. Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. *In re Bernard T.*, 319 S.W.3d at 596; *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596–97. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re Adoption of A.M.H.*, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

*In re Carrington H.*, 483 S.W.3d at 523–24.

**DISCUSSION**

*Sufficiency of juvenile court's final order*

Father contends that the juvenile court's findings of facts and conclusions of law are insufficient. A trial court is required to enter written findings of fact and conclusions of law following a termination of parental rights trial. *See* Tenn. Code Ann. § 36-1-113(k) (providing that "[t]he court shall enter an order that makes specific findings of fact and conclusions of law within thirty (30) days of the conclusion of the hearing"); *see also* Tenn. R. Civ. P. 52.01 ("In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment."). As we recently explained, this mandate

> "reflects the General Assembly's understanding that findings of fact and conclusions of law facilitate appellate review and promote the just and speedy resolution of appeals." *In re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *3 (Tenn. Ct. App. Nov. 25, 2003). These written findings allow the court to review the record de novo; yet "[w]ithout such findings and conclusions, this court is left to wonder on what basis the court reached its ultimate decision." *In re M.E.W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004).

*In re Jayla S.*, No. M2022-01492-COA-R3-PT, 2023 WL 5767630, at *11 (Tenn. Ct. App. Sept. 7, 2023). "There is no bright-line test by which to assess the sufficiency of factual findings, but the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *In re Kayden A.*, No. W2020-00650-COA-R3-PT, 2021 WL 408860, at *14 (Tenn. Ct. App. Feb. 5, 2021) (quoting *In re O.W.*, No. W2019-01127-COA-R3-PT, 2020 WL 97727, at *9 (Tenn. Ct. App. Jan. 9, 2020)).

Here, we take no issue with the juvenile court's order. The juvenile court's steps in reaching its ultimate conclusion are clear. As DCS notes in its brief, the juvenile court "makes numerous factual findings[,]" and "then makes conclusions of law under the applicable grounds and best-interest factors, which incorporates its previous factual findings." We agree with DCS that *In re Jayla S.* is persuasive here. In that case, the trial court "made numerous and specific written findings of fact, which it incorporated in its analysis. . . ." 2023 WL 5767630, at *11. We determined that the final order was sufficient, noting that "the grounds [for termination] are cumulative and nonexclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground. . . ." *Id.* (quoting Tenn. Code Ann. § 36-1-113(g)).

Further, as discussed later in this opinion, Father simply has not participated in this case. He attempted one of his action steps in the summer of 2020 but lost contact with DCS shortly thereafter. He did not appear at the adjudicatory hearing, did not file anything in the termination proceedings, and did not appear at trial. While his counsel appeared and cross-examined some witnesses, Father essentially put on zero proof at trial. Consequently, it is unsurprising that the factual findings as to Father are not detailed, as the juvenile court had little information with which to work. Accordingly, we are unpersuaded that the final order is insufficient.

*Grounds for termination[5]*

As noted above, the juvenile court's order starts with factual findings that apply to the various grounds for termination, which it then lists after the findings of fact. It is thus prudent to quote those findings of fact before addressing the five statutory grounds:

> The Court finds that [Father] has been represented by competent counsel from the inception of this case. However, [Father] has not availed himself of counsel's ability, and in fact, has not made very many appearances in court pertaining to these two children.
>
> Upon the petition, the evidence presented, arguments of counsel, exhibits and the entire record, the Court finds by clear and convincing evidence that the Petition to Terminate Parental Rights of the Respondent, [Father], as filed by the Tennessee Department of Children's Services, is well taken and should be GRANTED and relief granted thereunder. The Court found all of the State's witnesses to be credible.
>
> The Court finds that Katelyn [R.] . . . and Hailey [R.] . . . were brought before the Juvenile Court of Overton County on May 7, 2020, and that these children were brought into the protective supervision and custody of the Court due to issues of domestic violence, substance abuse, and potential lack of housing as exhibited by their parents at that time.
>
> The Court made findings on August 5, 2020, that the children were to be adjudicated dependent and neglected children based upon those facts outlined in the department's petition. The Court adopts and incorporates all of those findings from the Court's previous orders in the dependency and neglect file, specifically the order dated August 5, 2020, in which the Court finds the specific facts that led to the Court to conclude that the children were

---

[5] With all statutory grounds for termination, we apply the version of Tennessee Code Annotated section 36-1-113 in effect on the day the petition for termination was filed, in this case, July 26, 2021. *See In re Braxton M.*, 531 S.W.3d 708, 732 (Tenn. Ct. App. 2017).

in fact dependent and neglected. The Court notes that this Order is a final order and was not appealed, therefore it is res judicata.

The Court further finds that since the entry of that order, that [Father] has availed himself of very little services offered by the Department of Children's Services. The Court finds that the testimony of Jenna Vaughn was that [Father], as testified to by her, had drug Hailey [R.] through the house by her hair. The Court finds that, as testified to by Ms. Vaughn, that there was substance abuse and domestic violence in the home. The Court finds that one year after the children had been removed from the parents that [Father] continued to have problems with substances[.]

\*     \*     \*

The Court finds that, as testified to by [Ms.] Vaughn, that [Father] tested positive for Suboxone, THC, and methamphetamine, and continued to use those substances. [Father] was discharged from IOP, a substance abuse treatment program, for noncompliance in July of 2020. [Father] stopped communicating with the Department around that time.

The Court finds as a fact as testified to by Ms. Vaughn, that [Father] has not engaged in any parenting classes, has not addressed his housing situation, and has not successfully completed any drug treatment or domestic violence counseling or any of the requirements under his foster care permanency plan. The Court finds that all of these issues that existed at the time of the removal have been unaddressed by [Father].

The Court finds, as a fact, that [Father] has done nothing to change the circumstances which led to his children's removal from his custody. The Court notes that Ms. Vaughn testified that she is not even certain she could identify [Father] if he were to be in the courtroom today because of such little contact that she has had with [Father]. The Court finds that Hailey [R.] is the biological child of [Father]; however, [Father] has not availed himself or established paternity, as required by the statutes. The Court finds as a fact that Hailey [R.] has indicated that she is afraid of [Father] and does not want to be with [Father]. The Court finds as a fact that Katelyn [R.], likewise, does not wish to be reunited with [Father].

The Court finds as a fact that [Father] has not shown proof that he has adequate and sufficient housing or has addressed any of the issues that have led to the children's removal. The children have remained in foster care for 975 days as of today.

The Court finds as a fact, as was testified to by Ms. Vaughn, that they have identified a potential adoptive home for the children; and that placement is undergoing training for that process. It is possible that these children will have some permanency in their lives.

Following these findings, the juvenile court listed its conclusions of law as to the various statutory grounds, beginning with abandonment. We address each ground in turn.

A. Abandonment by failure to establish a suitable home

Among other circumstances, abandonment occurs when

(ii)(*a*) The child has been removed from the home or the physical or legal custody of a parent or parents or guardian or guardians by a court order at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and the child was placed in the custody of the department or a licensed child-placing agency;

(*b*) The juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and

(*c*) For a period of four (4) months following the physical removal, the department or agency made reasonable efforts to assist the parent or parents or the guardian or guardians to establish a suitable home for the child, but that the parent or parents or the guardian or guardians have not made reciprocal reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date. The efforts of the department or agency to assist a parent or guardian in establishing a suitable home for the child shall be found to be reasonable if such efforts equal or exceed the efforts of the parent or guardian toward the same goal, when the parent or guardian is aware that the child is in the custody of the department[.]

Tenn. Code Ann. § 36-1-102(1)(A)(ii).

With this ground, we "consider[] whether a child has a suitable home to return to after the child's court-ordered removal from the parent." *In re Adaleigh M.*, No. E2019-01955-COA-R3-PT, 2021 WL 1219818, at *3 (Tenn. Ct. App. Mar. 31, 2021). A

- 9 -

suitable home requires "'more than a proper physical living location.'" *In re Daniel B.*, No. E2019-01063-COA-R3-PT, 2020 WL 3955703, at *4 (Tenn. Ct. App. July 10, 2020) (quoting *Tenn. Dep't of Children's Servs. v. C.W.*, No. E2007-00561-COA-R3-PT, 2007 WL 4207941, at *3 (Tenn. Ct. App. Nov. 29, 2007)). A suitable home entails "[a]ppropriate care and attention" for the child and "must be free from drugs." *In re Matthew T.*, 2016 WL 1621076, at *7 (citing *In re Hannah H.*, No. E2013-01211-COA-R3-PT, 2014 WL 2587397, at *9 (Tenn. Ct. App. June 10, 2014)). DCS must make "reasonable efforts" to assist the parent by doing more than merely providing a list of service providers. *Id*. DCS "should utilize its superior resources in assisting with the establishment of a suitable home, but [those] 'efforts do not need to be Herculean.'" *In re Jamarcus K.*, No. M2021-01171-COA-R3-PT, 2022 WL 3755383, at *8 (Tenn. Ct. App. Aug. 30, 2022) (quoting *In re Hannah H.*, 2014 WL 2587397, at *9). Sole responsibility does not lie with DCS, and "[p]arents must also make reasonable efforts towards achieving the goals established by the permanency plan to remedy the conditions leading to the removal of the child." *Id*.

The juvenile court found that DCS proved this ground for termination by clear and convincing evidence, and we agree. It is undisputed that DCS removed the Children from Father's custody. The juvenile court adjudicated them dependent and neglected and placed them in DCS custody where they remained at the time of trial. Following the Children's removal, Ms. Vaughn assisted Father with getting into an IOP and provided drug screens to Father. She also contacted Father while he was incarcerated in December of 2020 and updated him on the case. Ms. Vaughn looked for Father again in January of 2021 and in June of 2021, but to no avail.[6] *See In re Matthew T.*, 2016 WL 1621076, at *9 ("A suitable home is more than a physical space, but an appropriate physical space is necessary nonetheless, and it is important for the Department to know the location of that space in order to determine if it is adequate.").

Under the circumstances, DCS's efforts were at least equal to, if not in excess of, Father's efforts at reunification. Further, Father did not establish a suitable home for the Children because he did not address his substance abuse issues and completed no action steps in the permanency plan. Consequently, the issues rendering Father's original home unsuitable, namely substance abuse and domestic violence, had not been addressed at the time of trial. And a suitable home is one free from drugs and domestic violence. *In re Navada N.*, 498 S.W.3d 579, 595 (Tenn. Ct. App. 2016).

Accordingly, we agree with the juvenile court that DCS proved this ground for termination by clear and convincing evidence.

---

[6] An "Affidavit of Reasonable Efforts" contained in the record provides that Ms. Vaughn conducted a diligent search for both parents in June of 2021.

B. Substantial noncompliance with permanency plan

The next ground found by the juvenile court was substantial noncompliance with the permanency plan. Parental rights may be terminated for "substantial noncompliance by the parent . . . with the statement of responsibilities in a permanency plan." Tenn. Code Ann. § 36-1-113(g)(2). This determination entails "more than merely counting up the tasks in the plan to determine whether a certain number have been completed." *In re Carrington H.*, 483 S.W.3d at 537 (citing *In re Valentine*, 79 S.W.3d 539, 547 (Tenn. 2002)).

The requirements of a permanency plan must be "reasonable and related to remedying the conditions that caused the child to be removed from the parent's custody in the first place." *In re M.J.B.*, 140 S.W.3d 643, 656 (Tenn. Ct. App. 2004) (citing *In re Valentine*, 79 S.W.3d at 547; *In re L.J.C.*, 124 S.W.3d 609, 621 (Tenn. Ct. App. 2003)). DCS must establish "that the parent's noncompliance is substantial in light of the degree of noncompliance and the importance of the particular requirement that has not been met." *In re M.J.B.*, 140 S.W.3d at 656 (citations omitted).

Here, the juvenile court found that no aspects of the permanency plan were completed, and the record does not preponderate against that finding. The only action step Father attempted was to enter the IOP, from which he was quickly discharged for failing to attend and for noncompliance. Father also continued to incur criminal charges during the custodial period. *See In re Nevaeh K.*, No. E2023-01106-COA-R3-PT, 2024 WL 837943, at *6 (Tenn. Ct. App. Feb. 28, 2024) (terminating mother's parental rights for substantial noncompliance where the "[m]other's drug-related criminal activity did not cease in response to the permanency plans and eventually led to her incarceration"). Ms. Vaughn testified at trial that Father never completed any other steps from his plan, and, given his absence from trial, Father put on no proof otherwise. Thus, the juvenile court correctly found, by clear and convincing evidence, that Father's parental rights should be terminated for substantial noncompliance with his permanency plan.

C. Persistence of conditions

Next, the juvenile court terminated Father's parental rights pursuant to Tennessee Code Annotated section 36-1-113(g)(3). Section (g)(3) provides that termination can occur when

> [t]he child has been removed from the home or the physical or legal custody of a parent or guardian for a period of six (6) months by a court order entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and:
>
> (i) The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent or guardian, or other conditions

exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent or guardian;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or guardian in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home[.]

Tenn. Code Ann. § 36-1-113(g)(3)(A).

As we have previously explained:

"A parent's continued inability to provide fundamental care to a child, even if not willful, . . . constitutes a condition which prevents the safe return of the child to the parent's care." *In re A.R.*, No. W2008-00558-COA-R3-PT, 2008 WL 4613576, at *20 (Tenn. Ct. App. Oct. 13, 2008) (citing *In re T.S. & M.S.*, No. M1999-01286-COA-R3-CV, 2000 WL 964775, at *7 (Tenn. Ct. App. July 13, 2000)). The failure to remedy the conditions which led to the removal need not be willful. *In re T.S. & M.S.*, 2000 WL 964775, at *6 (citing *State Dep't of Human Servs. v. Smith*, 785 S.W.2d 336, 338 (Tenn. 1990)). "Where . . . efforts to provide help to improve the parenting ability, offered over a long period of time, have proved ineffective, the conclusion [ ] that there is little likelihood of such improvement as would allow the safe return of the child to the parent in the near future is justified." *Id.* The purpose behind the "persistence of conditions" ground for terminating parental rights is "to prevent the child's lingering in the uncertain status of foster child if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child." *In re A.R.*, [2008 WL 4613576, at *20] (quoting *In re D.C.C.*, No. M2007-01094-COA-R3-PT, 2008 WL 588535, at *9 (Tenn. Ct. App. Mar. 3, 2008)).

*In re Navada N.*, 498 S.W.3d at 605–06.

Here, the Children were removed from Father's custody more than two years prior to trial and were adjudicated dependent and neglected on August 5, 2020. The first prong of section 36-1-113(g)(3) is thus satisfied. The major conditions underpinning the Children's removal were Father's substance abuse and domestic violence in the family home. The juvenile court found that these conditions persisted at the time of trial, and we agree. The scant information we have about Father shows that he continued to abuse drugs

- 12 -

and incur criminal charges during the custodial period. Moreover, because he stopped contacting his case worker, she was unable to facilitate Father's domestic violence classes or additional drug treatment. Insofar as the Children were in foster care for over two years by the time of trial, with almost zero effort by Father to remedy these conditions, there is little likelihood these conditions can be remedied any time soon. On the record before us, Father has made no effort to even have a relationship with the Children, much less remedy the persistent conditions necessitating their removal. As such, the continuation of any involvement by Father diminishes the Children's opportunity for integration into a safe and stable home.

Consequently, the juvenile court correctly concluded that Father's parental rights should be terminated due to persistence of conditions.

D. Failure to establish paternity[7]

Next, the juvenile court terminated Father's parental rights to Hailey R. pursuant to Tennessee Code Annotated section 36-1-113(g)(9)(A)(v), which provides:

(9)(A) The parental rights of any person who, at the time of the filing of a petition to terminate the parental rights of such person, or if no such petition is filed, at the time of the filing of a petition to adopt a child, is the putative father of the child may also be terminated based upon any one (1) or more of the following additional grounds:

\*　　　\*　　　\*

(v) The person has failed to file a petition to establish paternity of the child within thirty (30) days after notice of alleged paternity, or as required in § 36-2-318(j), or after making a claim of paternity pursuant to § 36-1-117(c)(2)[.]

At the outset, we note the confusion amongst various panels of this Court regarding which grounds for termination apply to putative fathers. The dispute stems from our Supreme Court's opinion in *In re Bernard T.*, in which the Court held that the grounds for termination found at section 36-1-113(g)(9) "cannot be used to terminate the rights of a person who is a child's biological parent, legal parent, or putative biological father at the time the termination petition is filed." 319 S.W.3d 586, 599 (Tenn. 2010). While *In re Bernard T.* has never been judicially overturned, our General Assembly later amended section 36-1-113(g)(9)(A) to provide that the additional grounds in that subsection may also be applied to terminate the rights of putative fathers. However, *In re Bernard T.* also "explicitly held that, where any of the section 36-1-113(g)(9)(A) grounds are applicable,

---

[7] This ground applies only to Hailey R.

the grounds in section 36-1-113(g)(1) through section 36-1-113(g)(8) are inapplicable." *In re E.C.*, No. E2016-02582-COA-R3-PT, 2017 WL 2438574, at *10 (Tenn. Ct. App. June 6, 2017) (citing *In re Bernard T.*, 319 S.W.3d at 604); *see also In re Jase P.*, No. E2016-02519-COA-R3-PT, 2017 WL 2672781, at *9 (Tenn. Ct. App. June 21, 2017) ("Under *In re Bernard T.*, where any grounds under Tenn. Code Ann. § 36-1-113(g)(9)(A) are applicable, grounds from Section 36-1-113(g)(1) through Section 36-1-113(g)(8) are inapplicable. This holding, of course, was before the recent legislative amendments to the statutes.").

As we explained in *In re Jase P.*, "this Court has not been entirely consistent in our application of Tenn. Code Ann. § 36-1-113(g)(9)(A), whether before or after the March 2016 legislative amendments." 2017 WL 2672781, at *8. In *In re Jase P.*, for example, the father's parental rights were terminated based upon statutory grounds found in subsection (g)(9)(A), as well as abandonment by wanton disregard, which is not a putative father ground. 2017 WL 2672781, at *9–10. On the other hand, in "*In re Candice H.*, No. M2016-02305-COA-R3-PT, 2017 WL 2365008, at *11 n.6 (Tenn. Ct. App. May 31, 2017) . . . we accepted DCS's concession that *In re Bernard T.* was binding precedent and that the father in that case was a putative biological father not liable to having his parental rights terminated by Tenn. Code Ann. § 36-1-113(g)(9)(A) in keeping with the holding of *In re Bernard T.*" *Id.* at *8.

Ultimately, we agree with the *In re Jase P.* court that Father's parental rights may be terminated pursuant to statutory grounds found both at section 36-1-113(g)(1)-(8), as well as section 36-1-113(g)(9)(A). *See id.* at *9 ("[W]e affirm all of the grounds found for termination, and so even if we err with respect to finding wanton disregard applicable, the outcome is the same."); *see also In re Hannah C.*, No. M2016-02052-COA-R3-PT, 2018 WL 558522 (Tenn. Ct. App. Jan. 24, 2018) (terminating a father's parental rights pursuant to both Tennessee Code Annotated section 36-1-113(g)(1) and section 36-1-113(g)(9)(A)). Indeed, the plain language of section 36-1-113(g)(9)(A) provides that these grounds are "additional" and "may also" be applied to putative fathers. To the extent that the grounds found in subsections 36-1-113(g)(1)-(8) do not apply at all to putative fathers, the terms "may also" and "additional" make little sense. Nonetheless, we echo the sentiment expressed in *In re Jase P.* that "[t]his issue is another on which our Supreme Court could provide clarity." 2017 WL 2672781, at *9.

Having determined that Tennessee Code Annotated section 36-1-113(g)(9)(A) applies to Father, we turn to the juvenile court's findings. Pursuant to this ground, the juvenile court found that Father did not meet the definition of legal parent or guardian as to Hailey R. and that he failed to establish paternity as to that child.

(A) "Legal parent" means:

(i) The biological mother of a child;

- 14 -

(ii) A man who is or has been married to the biological mother of the child if the child was born during the marriage or within three hundred (300) days after the marriage was terminated for any reason, or if the child was born after a decree of separation was entered by a court;

(iii) A man who attempted to marry the biological mother of the child before the child's birth by a marriage apparently in compliance with the law, even if the marriage is declared invalid, if the child was born during the attempted marriage or within three hundred (300) days after the termination of the attempted marriage for any reason;

(iv) A man who has been adjudicated to be the legal father of the child by any court or administrative body of this state or any other state or territory or foreign country or who has signed, pursuant to § 24-7-113, § 68-3-203(g), § 68-3-302, or § 68-3-305(b), an unrevoked and sworn acknowledgment of paternity under Tennessee law, or who has signed such a sworn acknowledgment pursuant to the law of any other state, territory, or foreign country; or

(v) An adoptive parent of a child or adult[.]

Tenn. Code Ann. § 36-1-102(29)(A).  Among other things, a "guardian" is "a person or entity appointed by a court to provide care, custody, control, supervision, and protection for a child, and authorized by the court to adopt or consent to the adoption of the child as a result of a surrender, parental consent, or termination of parental rights[.]"  Tenn. Code Ann. § 36-1-102(25)(A).

Father does not dispute that he does not meet the definition of a legal parent as to Hailey R., as he was not married to Hailey R.'s mother during the relevant periods.  Nor has he ever claimed to be her "guardian."  Rather, it is undisputed that Father is the putative father of Hailey R., as he lived with her for years and held himself out as her father.  Father also entered into a permanency plan with DCS regarding Hailey R.  *See* Tenn. Code Ann. §§ 36-1-102(44); 36-1-117(c)(4), (5).  Nonetheless, on the record before us, Father has never taken steps to establish his parentage as to Hailey R.  Accordingly, the ground of failure to establish paternity as to Hailey R. is proven by clear and convincing evidence.

E. Failure to manifest an ability and willingness to assume custody

The final ground for termination found by the juvenile court was failure to manifest an ability and willingness to assume custody of the Children.  This ground applies when:

- 15 -

[a] parent . . . has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]

Tenn. Code Ann. § 36-1-113(g)(14). This ground requires clear and convincing proof of two elements. *In re Neveah M.*, 614 S.W.3d 659, 674 (Tenn. 2020). The petitioner must first prove that the parent has failed to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of the child. *Id.* The petitioner must then prove that placing the child in the custody of the parent poses "a risk of substantial harm to the physical or psychological welfare of the child." *Id.* The statute requires "a parent or guardian to manifest both an ability and willingness" to personally assume legal and physical custody or financial responsibility for the child. *Id.* at 677. Therefore, if a party seeking termination of parental rights establishes that a parent or guardian "failed to manifest *either* ability or willingness, then the first prong of the statute is satisfied." *Id.*

Regarding the second prong of section 36-1-113(g)(14),

[t]he courts have not undertaken to define the circumstances that pose a risk of substantial harm to a child. These circumstances are not amenable to precise definition because of the variability of human conduct. However, the use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*In re Jamarcus K.*, 2022 WL 3755383, at *14 (quoting *In re Virgil W.*, No. E2018-00091-COA-R3-PT, 2018 WL 4931470, at *8 (Tenn. Ct. App. Oct. 11, 2018)).

The juvenile court found that Father failed to manifest both the ability and willingness to assume custody or financial responsibility for the Children. We agree. Simply put, Father has put forth no effort to reunite with his Children. Aside from calling to ask for a continuance the first day of trial, Father has not been involved in his Children's case since December of 2020. His substance abuse had not been addressed by the time of trial, and, as far as his case worker knew, neither had any of the other issues underpinning the Children's removal. Consequently, we agree with the juvenile court that placing the Children in Father's custody poses a risk of substantial harm to the physical or psychological welfare of the Children. This is particularly true for Hailey R., who bore the brunt of Father's physical abuse. According to Ms. Vaughn's trial testimony, Hailey R.'s relationship with Father "was very volatile[,]" and "Hailey is still dealing with the grief

that that caused her and the trauma." At different times, both Children have expressed to providers that they do not wish to be placed back in Father's custody. Under the circumstances, particularly the absence of any countervailing proof offered by Father, there is a risk of substantial harm to the Children's physical and psychological welfare should they be returned to Father's custody. The juvenile court correctly determined that Father's parental rights should be terminated pursuant to section 36-1-113(g)(14).

*Best Interests*

In addition to proving at least one statutory ground for termination, DCS must prove by clear and convincing evidence that the Children's best interests are served by terminating Father's parental rights. Tenn. Code Ann. § 36-1-113(c). Indeed, "a finding of unfitness does not necessarily require that the parent's rights be terminated." *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005) (citing *White v. Moody*, 171 S.W.3d 187 (Tenn. Ct. App. 2004)). Our termination statutes recognize that "[n]ot all parental misconduct is irredeemable[,]" and that "terminating an unfit parent's parental rights is not always in the child's best interests." *Id.* As such, the focus of the best interests analysis is not the parent but rather the child. *Id.*; *see also White*, 171 S.W.3d at 194 ("[A] child's best interests must be viewed from the child's, rather than the parent's, perspective.").

We look at twenty non-exhaustive factors when determining whether termination is in a child's best interests:

(A) The effect a termination of parental rights will have on the child's critical need for stability and continuity of placement throughout the child's minority;

(B) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition;

(C) Whether the parent has demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs;

(D) Whether the parent and child have a secure and healthy parental attachment, and if not, whether there is a reasonable expectation that the parent can create such attachment;

(E) Whether the parent has maintained regular visitation or other contact with the child and used the visitation or other contact to cultivate a positive relationship with the child;

(F) Whether the child is fearful of living in the parent's home;

(G) Whether the parent, parent's home, or others in the parent's household trigger or exacerbate the child's experience of trauma or post-traumatic symptoms;

(H) Whether the child has created a healthy parental attachment with another person or persons in the absence of the parent;

(I) Whether the child has emotionally significant relationships with persons other than parents and caregivers, including biological or foster siblings, and the likely impact of various available outcomes on these relationships and the child's access to information about the child's heritage;

(J) Whether the parent has demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in the home of the parent, including consideration of whether there is criminal activity in the home or by the parent, or the use of alcohol, controlled substances, or controlled substance analogues which may render the parent unable to consistently care for the child in a safe and stable manner;

(K) Whether the parent has taken advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions;

(L) Whether the department has made reasonable efforts to assist the parent in making a lasting adjustment in cases where the child is in the custody of the department;

(M) Whether the parent has demonstrated a sense of urgency in establishing paternity of the child, seeking custody of the child, or addressing the circumstance, conduct, or conditions that made an award of custody unsafe and not in the child's best interest;

(N) Whether the parent, or other person residing with or frequenting the home of the parent, has shown brutality or physical, sexual, emotional, or psychological abuse or neglect toward the child or any other child or adult;

(O) Whether the parent has ever provided safe and stable care for the child or any other child;

(P) Whether the parent has demonstrated an understanding of the basic and specific needs required for the child to thrive;

(Q) Whether the parent has demonstrated the ability and commitment to creating and maintaining a home that meets the child's basic and specific needs and in which the child can thrive;

(R) Whether the physical environment of the parent's home is healthy and safe for the child;

(S) Whether the parent has consistently provided more than token financial support for the child; and

(T) Whether the mental or emotional fitness of the parent would be detrimental to the child or prevent the parent from consistently and effectively providing safe and stable care and supervision of the child.

Tenn. Code Ann. § 36-1-113(i)(1)(A)-(T). "The relevancy and weight to be given each factor depends on the unique facts of each case." *In re Marr*, 194 S.W.3d at 499. In some circumstances, one factor may prove dispositive. *In re Audrey S.*, 182 S.W.3d at 878. Nevertheless, we must still consider "all the factors and all the proof" before concluding termination is in a child's best interests. *In re Gabriella D.*, 531 S.W.3d 662, 682 (Tenn. 2017).

After considering all relevant factors, we agree with the juvenile court that terminating Father's parental rights is in the Children's best interests. Father made no progress on his permanency plan during the custodial period and did not bother to appear at trial. There is no suggestion in the record that Father has made adjustments to his circumstances, much less lasting adjustments that would make it safe for the Children to be in Father's care. What the record establishes about Father is that he continued to use illegal substances and incur criminal charges during the custodial period and stopped attempting to contact his Children altogether. Inasmuch as Father essentially did not participate in this case in the juvenile court, Father has acted with no urgency in reuniting with the Children. Moreover, the Children, particularly Hailey R., have expressed on more than one occasion that they do not want to live with Father and are afraid of him. The proof at trial showed that the Children were still working through the trauma caused by Father's abuse, and they do not have a significant bond with Father. Under all of these circumstances, the evidence is clear and convincing that termination of Father's parental rights is in the Children's best interests.

Father takes issue with the juvenile court's findings regarding the best interest factors, noting that after several of the factors, the juvenile court states only that "[t]he Court finds that this factor bodes in favor of termination based upon the same findings outlined by the Court's Order listed above in this ruling." Again, we take no issue with the juvenile court's order. Its reasoning is clear, and there are several best interest factors listed in the order under which the juvenile court makes more specific statements.

- 19 -

In sum, DCS proved both the statutory grounds for termination and that termination is in the Children's best interests, by clear and convincing evidence. Thus, we affirm the juvenile court's ruling that Father's parental rights should be terminated as to both Children.

## CONCLUSION

We affirm the judgment of the Juvenile Court for Overton County, and the case is remanded for further proceedings consistent with this opinion. Costs on appeal are assessed to the appellant, Nathaniel R., for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE